```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

                                     )
                                     )
SILVIO SOTO, HOLY IRISH SOTO,        )
                                     )
                Plaintiffs,          )    Civil No. 2016-17
                                     )
          v.                         )
                                     )
DIRECTOR, VIRGIN ISLANDS BUREAU      )
OF INTERNAL REVENUE,                 )
                                     )
                Defendant.           )
                                     )
                                     )
_____)
```

**ATTORNEYS:**

**Alexander Golubitsky**
St. Thomas, U.S.V.I.
  *For Silvio Soto and Holy Irish Soto,*

**Carol Thomas-Jacobs, AG**
Virgin Islands Department of Justice
St. Thomas, U.S.V.I.
  *For Director, Virgin Islands Bureau of Internal Revenue.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is Silvio Soto's petition for a redetermination of his income tax liability to the Virgin Islands Bureau of Internal Revenue for tax years 2012 and 2013.

### I. FACTUAL AND PROCEDURAL HISTORY

Silvio Soto ("Soto") and Holy Irish Soto (Silvio Soto and Holy Irish Soto are collectively referred to as the "Sotos") are

residents of the Virgin Islands. In 2012 and 2013, Soto gambled extensively. Soto primarily played roulette at the Windward Passage Hotel on St. Thomas. He also wagered on other electronic games at several other establishments. Soto asserts that he kept track of his winnings and losses in a notebook. A separate entry was created for each day that he gambled. Each entry included information including the gambling venue, winnings, and losses. Soto asserts that when he returned home after each day of gambling, he entered the data from his notebook into a spreadsheet. Soto's gambling spreadsheet includes 8 columns indicating: date; venue; game; walk in money; gross winnings; walk out money; net winnings or losses; and, withheld tax.

In tax years 2012 and 2013, the Sotos filed a joint income tax return. In each year, the Sotos included Silvio Soto's total gambling winnings and losses in their income tax return. For their 2012 tax return, the Sotos reported that Silvio Soto's total gambling winnings were $94,331 and that his total gambling losses were $29,887. On their 2013 income tax return, the Sotos reported total winnings as $64,489 and total losses as $24,347. For each year, Soto calculated his total winnings by adding the gross winnings from each entry for that year.

The Virgin Islands Bureau of Internal Revenue (the "VIBIR") audited the Sotos' 2012 and 2013 tax returns. During the audit,

the Sotos provided a copy of Silvio Soto's gambling spreadsheet to the VIBIR. The VIBIR concluded that the Sotos' reported gambling winnings were correct. The VIBIR found that the documentation of gambling losses was insufficient and determined that the correct deduction was $20,921.18 for 2012 and $17,042.71 for 2013. This amounted to a 30% reduction from what the Sotos claimed. After the audit, the VIBIR issued a notice of deficiency to the Sotos indicating that the Sotos owed $2,892 for the 2012 tax year and $1,825 for the 2013 tax year.

On February 16, 2016, the Sotos filed a complaint against the VIBIR seeking a redetermination of their tax liability for the 2012 and 2013 tax years. On January 17, 2017, the VIBIR and the Sotos moved for summary judgment. The Court denied both motions for summary judgment.

At a May 19, 2017, status conference, both parties indicated a desire to try this matter on the factual record as evidenced in the parties' submissions currently before the Court. Thereafter, the Court ordered trial briefs by no later than July 10, 2017. Both parties timely submitted trial briefs.

## II. DISCUSSION

The Third Circuit has summarized the Virgin Islands tax law as follows:

> In the Naval Service Appropriation Act of 1922, Congress passed legislation applying the Internal Revenue Code of the United States to the Virgin Islands. *See* Pub. L. 94-932 (codified at 48 U.S.C. § 1397); *Chase Manhattan Bank, NA. v. Gov't of the Virgin Islands*, 300 F.3d 320, 322, 44 V.I. 457 (3d Cir. 2002). This legislation provides that "[t]he income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands." 48 U.S.C. § 1397. This statutory scheme has come to be known as the "mirror code" because Congress designed Virgin Islands tax law to mirror the tax laws in effect on the mainland. *Chase Manhattan Bank*, 300 F.3d at 322. As a result of this legislation, the words "Virgin Islands" are substituted for the words "United States" throughout the Internal Revenue Code. *Bizcap, Inc. v. Olive*, 892 F.2d 1163, 1165 (3d Cir.1989).

*Cooper v. C.I.R.*, 718 F.3d 216, 219 (3d Cir. 2013). Under this "Mirror Code," the provisions of the Internal Revenue Code and its accompanying regulations apply to taxes levied in the Virgin Islands except where displaced by local law. *Oelsner v. Virgin Islands*, 294 F. Supp. 2d 689, 693 (D.V.I. 2003).

> The Virgin Islands legislature has enacted in Subchapter II of Title 33 a comprehensive plan for procedure and administration of the mirror image income tax derived from Subtitle F of the Internal Revenue Code of 1954. This plan includes a provision for judicial review in the district court of asserted deficiencies, 33 V.I.C. §§ 942, 943, 944, and 1931(1), analogous to review in the tax court. 26

> U.S.C. §§ 6212, 6213. It also permits suits for refund, 33 V.I.C. § 1692, analogous to such suits pursuant to 26 U.S.C. § 7422.

*Pan Am. World Airways Inc. v. Duly Authorized Gov't of the V.I.*, 459 F.2d 387, 391 n. 2, 8 V.I. 558 (3d Cir. 1972).

"Virgin Islands residents may litigate the amount of their income tax liability in two ways." *WIT Equip. Co.,* 185 F. Supp.2d 500, 503 (D.V.I. 2001). The first avenue is a refund action. In order to pursue a refund action in this Court, a taxpayer must pay the tax assessed and then file a refund claim for the amount overpaid. 26 U.S.C. § 7422; 33 V.I.C. § 1692. The second avenue is a petition for redetermination. Upon receiving a notice of deficiency from the VIBIR, the taxpayer may petition this Court for a redetermination of their assessed deficiency. 26 U.S.C. § 6213; V.I. Code Ann. tit. 33, § 943.

Thus, in the Virgin Islands if the director of the VIBIR determines a tax deficiency exists, he is authorized to issue a notice of deficiency to a taxpayer by registered mail. *See* V.I. Code Ann. tit. 33 § 942. Thereafter, the taxpayer may file a petition with the district court for a redetermination of the deficiency. *See* V.I. Code Ann. tit. 33, § 943(a). Accordingly, it is the notice of deficiency from the VIBIR coupled with a petition for redetermination that brings a taxpayer before this

Court. *See Birdman v. Office of the Governor*, No. 2009-55, 2010 U.S. Dist. LEXIS 101959, at *11 (D.V.I. Sep. 27, 2010).

To the extent a taxpayer seeks a redetermination of a tax liability owed to the IRS, the procedure is similar, although, the venue for a redetermination action is different. Courts have recognized that, pursuant to 26 U.S.C. § 6213, the United States has waived its sovereign immunity for petitions for redetermination brought in conformity with the requirements of that statute. *See Williams*, 243 Fed. Appx. at 236 (9th Cir. 2007) (observing that challenging a proposed tax deficiency in Tax Court is one of the two "alternatives under which the United States waives its sovereign immunity and consents to be sued in regard to federal income taxes"); *Mason v. Hutton*, 141 F.3d 1185, 1185 (10th Cir. 1998)(unpublished) (listing section 6213 as a statute in which the United States has waived its sovereign immunity); *Gasparutti v. United States*, 22 F. Supp. 2d 1114 (1996) (noting that section 6213(a) provides a waiver of sovereign immunity "if a petition is filed . . . within 90 days after the issuance of the Notice of Deficiency provided for by 26 U.S.C. section 6212").

**III. ANALYSIS**

The parties generally agree on the issues before the Court. Soto argues that "[t]he only fact that need be decided by this Court is the correct amount of the gambling deduction for the Petitioners in each of the 2012 and 2013 tax years." ECF No. 57 at 4. The VIBIR asserts that "[t]he sole issue disputed by the parties is whether the [Sotos] have provided evidence to document their gambling losses for the tax years ended [sic] December 31, 2012 and December 31, 2013." ECF No. 58. The Court agrees.

Because "[t]he income-tax laws in force in the United States of America . . . shall be held to be likewise in force in the Virgin Islands," 48 U.S.C. § 1397, the Court will be guided by the Internal Revenue Code, its related rules, and caselaw interpreting the relevant statutes and rules. To that end, the Court will regard the Internal Revenue Bureau ("IRB") and its Director as entities that stand in the same legal shoes as the Internal Revenue Service ("IRS") and its Commissioner.

As a general matter, where the IRS has determined that a tax deficiency exists, that "determination is entitled to a presumption of correctness." *Anastasato v. Commissioner*, 794 F.2d 884, 887 (3d Cir. 1986). The VIBIR similarly will be accorded that presumptive deference. Where the taxpayer seeks a

redetermination, "the burden of production as well as the ultimate burden of persuasion is placed on the taxpayer." *Id.* The taxpayer must "prov[e] entitlement to a claimed deduction by a preponderance of the evidence." *Blodgett v. Comm'r*, 394 F.3d 1030, 1035 (8th Cir. 2005); *see also* Tax Court Rule 142(a). This burden may shift back to the Commissioner if the taxpayer introduces credible evidence with respect to any relevant factual issue and meets other conditions, including maintaining required records. 28 U.S.C. § 7491(a); *Blodgett*, 394 F.3d at 1035.

In order to meet his burden, Soto directs the Court to his affidavit in support of his trial brief. In the affidavit, Soto outlines the evidence he offers to substantiate his gambling losses for the 2012 and 2013 tax years. Soto Aff.; ECF No. 57-8. Every time Soto went to gamble, he brought a small writing pad with him. As he made bets, he recorded those bets on the writing pad. After he returned home from a day of gambling, Soto entered the day's information into a pre-programmed spreadsheet on his computer. He updated the spreadsheet every time he gambled.

Soto also submitted a copy of detailed daily gambling logs. These computer-generated spreadsheets contain the date Soto went to gamble, the location where he gambled, the game he played, how much money he took with him each day, how much he won, how

much he left the institution with, his net winnings or losses for the day, and if any tax was withheld. Some days contain multiple entries that reflect multiple gambling trips in one day.

Finally, Soto provided the Court with two Form W-2G tax forms from Southland Gaming of the VI, Inc., ("Southland Gaming") that indicate two instances where Southland Gaming withheld federal taxes from Soto's winnings. Soto's spreadsheets accurately reflect the information in the two W-2Gs. The VIBIR does not dispute the accuracy of any specific log entry. Rather, the VIBIR concluded that Soto failed to substantiate his claimed losses for 2012 and 2013.

The IRS has suggested that gamblers regularly maintain a diary, supplemented by verifiable documentation, of gambling winnings and losses. *See* Rev. Proc. 77-29, 1977-2 C.B. 538 (I.R.S. July 1, 1977). The procedures state that:

> An accurate diary or similar record regularly maintained by the taxpayer, supplemented by verifiable documentation will usually be acceptable evidence for substantiation of wagering winnings and losses. In general, the diary should contain at least the following information:
>
> 1) Date and type of specific wager or wagering activity;
> 2) Name of gambling establishment;
> 3) Address or location of gambling establishment;
> 4) Name(s) of other person(s) (if any) present with taxpayer at gambling establishment; and

> 5) Amount(s) won or lost.
>
> Verifiable documentation for gambling transactions includes but is not limited to Forms W-2G; Forms 5754, Statement by Person Receiving Gambling Winnings; wagering tickets, canceled checks, credit records, bank withdrawals, and statements of actual winnings or payment slips provided to the taxpayer by the gambling establishment.

*Id.*

Soto's gambling log substantially complies with the suggested procedures. Soto's two W-2G forms also provide some degree of corroboration for specific days in which each W-2G refers. Soto's sworn affidavit also is worthy of come credit. There is no record evidence that suggests that Soto's logs are anything less than accurate and trustworthy. Additionally, the Court finds that the regularity and thoroughness of Soto's records substantially comply with the record keeping standard outlined in the relevant section of the Code of Federal Regulations, which address taxpayer records:

> In general. Except as provided in paragraph (b) of this section, any person subject to tax under Subtitle A of the Code (including a qualified State individual income tax which is treated pursuant to section 6361(a) [26 USCS § 6361(a)] as if it were imposed by Chapter 1 of Subtitle A), or any person required to file a return of information with respect to income, *shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information.*

26 C.F.R. § 1.6001-1 (emphasis added). Accordingly, and in light of the evidence adduced on the record, the Court finds that Soto has met his burden of production and persuasion with respect to the validation of his gambling loss deduction.

In light of that holding, the VIBIR's deficiency assessment is not entitled to a presumption of correctness. *See Anastasato,* 794 F.2d at 887 ("If the taxpayer offers evidence that the determination was incorrect and the Commissioner offers no evidence to support the assessment, the taxpayer will have met his ultimate burden 'unless such evidence is specifically rejected as improbable, unreasonable, or questionable.'" (citations omitted)). Indeed, faced with Soto's records, the VIBIR has not provided an explanation as to how it arrived at the conclusion that a reduction of Soto's claimed losses was justified. As such, there is no evidence on the record from which the Court can determine on what basis the VIBIR decided to reduce Soto's gambling losses. Standing alone, the reduction appears to be an arbitrary reduction untethered to any alleged inaccuracies of Soto's records.

*Soto v. VIBIR*
Civil Case Number 16-17
Memorandum Opinion
Page 12

Accordingly, the Court finds that the Sotos are entitled to the deductions for gambling losses that they claimed in 2012 and 2013.

An appropriate Judgment follows.

 

S\_____
    **CURTIS V. GÓMEZ**
    **District Judge**